FIRST NATIONAL BANK OF HAYES CENTER, APPELLANT, v. VINCENT W. ROSE AND LUCILE I. ROSE, HUSBAND AND WIFE, APPELLEES.

330 N.W.2d 894

Filed March 4, 1983. No. 81-772.

Murphy, Pederson, Piccolo & Anderson, for appellant.

Schneider & Nisley, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and MORAN, D.J.

CAPORALE, J.

Plaintiff-appellant, First National Bank of Hayes Center (Bank), appeals from the denial of its motion for summary judgment and the granting of the motion for summary judgment filed by defendants-appellees, Vincent W. Rose and Lucile I. Rose, husband and wife. We reverse.

The plaintiff Bank urges the trial court erred in determining that its security interest did not attach to the items in question prior to the time they became fixtures and therefore did not defeat the Roses' claim to such items.

The Roses sold a 1,200-acre farm to Mr. and Mrs. Cary W. Leonard pursuant to a land contract dated April 23, 1976. The Leonards paid the Roses $80,000 toward the purchase price of $330,000. Subsequently, Mr. Leonard arranged with Sargent Irrigation Company for the drilling and installation of an irrigation well with pertinent equipment, including the items in question: a pump, bowl, well column, and gear head. On or about April 27, 1976, Mr. Leonard signed a promissory note, a financing statement, and a security agreement in favor of the Bank in exchange for a loan of $54,000. The financing statement and security agreement each covered, among other things, all farming and irrigation equipment. The financing statement was filed in the office of the Lincoln County clerk on April 29, 1976, but the security agreement was not filed in the office of the Lincoln County register of deeds until September 18, 1979. According to Mr. Rose, the well was drilled in April 1976 and the items in question were delivered to the farm and installed during the spring of 1977. Because the Leonards were unable to meet the payment schedule set forth in the land contract, they and the Roses, on or about July 21, 1978, entered into an agreement modifying the land contract. Under the terms of this modification agreement the Leonards paid $15,580 rather than the $23,420 due May 1, 1978; agreed that if the revised payment schedule was not met on November 1, 1978, the Roses were to keep all payments previously made to them; the quitclaim deed executed by the Leonards would be delivered by the escrow agent to the Roses; and the Leonards would vacate the property on or before March 1, 1979. The Leonards defaulted and the quitclaim deed was delivered to the Roses during the first part of November 1978; the Roses took possession of the land on which the well was located on or about March 1, 1979. An effort by Sargent Irrigation Company during the latter part of November 1978 to pull out the pipe was successfully

thwarted by Mr. Rose. Thereafter, the plaintiff Bank brought this action to replevin the items in question and to recover damages. Subsequently, the Bank moved for a summary judgment that it was entitled to possession of the items in question. That motion was overruled by the trial court. The Roses also filed a motion for summary judgment, the precise nature of which we cannot determine because, although the Bank's praecipe calls for such, it is not found in the transcript. However, the Roses' notice of hearing on a summary judgment motion and the judgment from which the plaintiff Bank appeals are contained in the transcript. That judgment dismisses all of the Bank's claims relevant to this appeal against the Roses.

The rights of the parties are controlled by the Uniform Commercial Code as adopted in Nebraska. The first question to be determined is when plaintiff Bank acquired a security interest in the items in question. Neb. U.C.C. § 9-204(1) (Reissue 1971), now found generally at Neb. U.C.C. § 9-203(1) (Reissue 1980), provided then as follows: "A security interest cannot attach until there is agreement (subsection (3) of section 1-201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching."

The agreement element was met by the execution of the security agreement on April 27, 1976. The value requirement was met by the plaintiff advancing to Mr. Leonard the amount of the loan. Therefore, the only element which remains for consideration is at what time the debtor Leonard acquired rights in the collateral, for that is the time which determines when plaintiff's security interest "attached," that is to say, came into existence. Although there is dictum in *Tillotson v. Stephens,* 195 Neb. 104, 237 N.W.2d 108 (1975), which may suggest otherwise, when the collateral consists of goods pur-

chased by the debtor, the sales article of the Uniform Commercial Code determines when the debtor has acquired rights in the collateral. *In re King-Porter Company,* 446 F.2d 722 (5th Cir. 1971). *Tillotson* was concerned not with the question of when a security interest attached but, rather, with the priority of claims as between parties to a conditional sales contract and a subsequent purchaser of realty for value.

Neb. U.C.C. § 2-401 (Reissue 1980) provides, as it did at the time in question: "Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. . . .

"(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this act. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

"(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place . . . ."

Since the items in question could not be affixed to the realty until after delivery, even if installation were to have taken place immediately thereafter, it necessarily follows that in this instance plaintiff's

security interest came into existence prior to the time the items were attached to the realty and thus became fixtures. See, also, *Wood Chevrolet Co. v. Bank of the Southeast,* 352 So. 2d 1350 (Ala. 1977), holding that delivery controlled when title passed to certain automobiles.

The foregoing conclusion makes necessary that we determine the priority between plaintiff's claim and the Roses' claim. Although a number of amendments became effective on July 19, 1980, at the time material herein Neb. U.C.C. § 9-313 (Reissue 1971) provided in pertinent part as follows:

"(2) A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4).

. . . .

"(4) The security interests described in subsections (2) and (3) do not take priority over (a) a subsequent purchaser for value of any interest in the real estate; or (b) a creditor with a lien on the real estate subsequently obtained by judicial proceedings; or (c) a creditor with a prior encumbrance of record on the real estate to the extent that he makes subsequent advances if the subsequent purchase is made, the lien by judicial proceedings is obtained, or the subsequent advance under the prior encumbrance is made or contracted for without knowledge of the security interest and before it is perfected. A purchaser of the real estate at a foreclosure sale other than an encumbrancer purchasing at his own foreclosure sale is a subsequent purchaser within this section." Accordingly, plaintiff's security interest takes priority over the claim of the Roses unless the Roses come within any one of the exceptions contained in § 9-313(4). They clearly obtained no subsequent lien by judicial proceedings. Nor did they make any subsequent advances; the evidence establishes that the Leonards made a payment to

the Roses in exchange for a modification of the land contract. The question then becomes solely whether the Roses are subsequent purchasers for a value. The delivery of the quitclaim deed to them did not create in them any interest in the realty which they did not already own. It merely terminated the equitable lien of the Leonards in the realty, who had in fact lost such by being in default. Delivery of the quitclaim deed simply fulfilled the bargained-for procedural shortcut to clear the Roses' title in and to the land. See *O'Hara Plumbing Co., Inc. v. Roschynialski,* 190 Neb. 246, 207 N.W.2d 380 (1973), holding that a land contract vendee has an equitable interest in the land. Unlike the purchaser at the foreclosure sale in *Tillotson v. Stephens,* 195 Neb. 104, 237 N.W.2d 108 (1975), the Roses were not subsequent purchasers for value; consequently, the security interest of the plaintiff Bank is superior to the claim of the Roses. See, also, § 9-313, Comment 3, which states: "Where a security interest in the goods as chattels has attached before affixation, subsection (2) gives the secured party priority over all prior claims based on an interest in the realty. If the secured party perfects his interest by filing, which he may do in advance of affixation, he takes priority over subsequent realty claims as well. So long as he fails to perfect his interest he may, however, be subordinated to the subsequent claimants described in subsections (4) (a), (b) and (c). The last sentence of subsection (4) on purchasers at foreclosure sales clarifies a point on which prior decisions have been in conflict."

Each party filed a motion for summary judgment. The pleadings, together with the depositions and affidavits received in evidence, show there is no genuine issue as to any material fact and establish that the plaintiff Bank, rather than the Roses, is entitled to judgment as a matter of law. Under such circumstances the plaintiff Bank's motion for partial summary judgment should have been sustained and

the motion of the Roses overruled. *Mutual Benefit Life Ins. Co. v. Chisholm, ante* p. 301, 329 N.W.2d 103 (1983); *Johnsen v. Harper, ante* p. 145, 328 N.W.2d 192 (1982).

The judgment of the lower court in favor of the defendants Rose dismissing the claim of the plaintiff Bank is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.