Appellant, Wood Chevrolet Company, Inc. (Wood), appeals from a judgment for various appellees. We affirm.
Wood, a Birmingham retail automobile dealership, entered into an arrangement with United Motorists Association (UMA), a Birmingham business offering leasing, financing, and related services, whereby UMA would secure new automobiles, for its customers at a fleet discount, which Wood would then deliver to UMA's customers. Concurrent with the delivery of each automobile to each customer, a promissory note and security agreement were executed in favor of UMA whereby each customer agreed to pay UMA for the automobile and granted UMA a security interest therein. These notes and security agreements were assigned to appellee, Bank of the Southeast (Bank), which paid UMA by depositing funds into its general checking account at the Bank.
Testimony by Allison Turner Yeackle, corporate secretary of UMA, indicates that Wood expected UMA, rather than UMA's customers, to pay for the vehicles. However, after UMA went bankrupt, Wood brought suit against the Bank and the individual customers of UMA who had possession of the automobiles, praying, inter alia, for payment for the vehicles or their return.
Trial was held, ore tenus, and a final decree was entered for the appellees, holding, inter alia: that the customers of UMA, in possession of the vehicles, were innocent of any wrongdoing, although each is fully bound to the terms of the written contracts and the security agreements entered into; that appellee, Bank, parted with valuable consideration in reliance upon a course of dealing between Wood and UMA, and is, therefore, the proper and legal holder of the contracts, documents, and security agreements, and is entitled to enforce them according to their terms; that all payments and credits made or provided by each customer to the Bank shall be applied to the indebtedness due the Bank, and should any of these contracts be in default, the Bank shall make further application to the court for relief; that Wood must return Coggin's vehicle, which it is allegedly holding under a mechanic's lien for repairs; that Wood must deliver all evidences of title in its possession to the Bank and furnish the Bank with whatever is necessary to fix title in the customers or owners, subject to the *Page 1352 
respective liens of the Bank; and, that all other relief requested is denied.
Wood's motion for new trial was overruled. Hence, this appeal.
Appellant Wood makes three main contentions on appeal. First, Wood contends that UMA acted as agent for the appellee-owners, whom Wood alleges were "principals," and that because these alleged principals retained the automobiles, they were liable to pay for them. Second, Wood contends, in the alternative, that a "sale" of these vehicles did not occur in that title was retained in Wood. Third, Wood contends that the Bank has no valid or enforceable security interests in these vehicles, since it "acquired no interests" in the instruments from its assignor, UMA, and thus, they are unenforceable. We cannot agree with any of these contentions.
We will now proceed to answer these contentions seriatim.
First, in Alabama, the question of agency is one of fact. SeeRiley v. Ford Motor Co., 442 F.2d 670 (5th Cir. 1971); Nearhosv. Keith, 221 Ala. 643, 130 So. 409 (1930). As such, it is subject to the ore tenus rule. Here, of course, the trial judge did not make specific findings of fact. Where, as here, however, the trial judge does not make express findings of fact, the Supreme Court must, nevertheless, assume that the trial judge found facts which would support his judgment, unless such a finding would be clearly erroneous and against the great weight and preponderance of the evidence. Lipscomb v.Tucker, 294 Ala. 246, 314 So.2d 840 (1975). In this case, we do not think the great weight of the evidence supports a finding of agency.
It has been said that there can be no agency relationship absent a right of control by the principal over his agent. 2A C.J.S. Agency § 6, pp. 560-562. Cf. Hodges Company, Inc. v.Albrecht, 288 Ala. 281, 259 So.2d 829 (1972). It is not essential that the right of control be exercised so long as that right actually exists. Id. Here, it seems apparent that the various owners exercised no control over the dealings between the alleged agent, UMA, and Wood. UMA apparently sought out the relationship with Wood and worked out the details, including the financing plan, prior to contacting the alleged principals, the owners, who then merely agreed to the terms of the plan in order to acquire automobiles at a discount. Such a factual setting clearly negates Wood's assertion that the owners were principals since they failed to exercise that degree of control essential to establish an agency relationship. Thus, it cannot be said that the owners, as principals, must answer for the debt of their alleged agent, UMA, since no agency relationship existed.
Second, Wood's next contention is that no valid "sale" of these vehicles occurred, because of lack of consideration and because Wood retained the Manufacturer's Statement of Origin, which Wood apparently equates with retaining title. Again, we cannot agree. Tit. 7A, § 2-106, Code of Alabama 1940 (§7-2-106, Code 1975), provides: "A `sale' consists in the passing of title from the seller to the buyer for a price."
Passage of title is governed by Tit. 7A, § 2-401 (§ 7-2-401, Code 1975), which provides, in pertinent part:
 ". . . title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
 "(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place. . . ."
Wood argues that its retention of the Manufacturer's Statement of Origin evidences an explicit agreement to retain title until payment in full of the invoice was received. We disagree.
It has been held that non-delivery of a certificate of title at the time of a sale *Page 1353 
does not prevent the passage of title from the seller to the buyer. See, e.g., A.C. Rent-A-Car, Inc. v. American NationalBank Trust Co. of Mobile, 339 F. Supp. 506 (S.D.Ala. 1972);Bunch v. Signal Oil and Gas Co., 505 P.2d 41 (Colo.App. 1972). This is true even where a state's certificate of title act provides that no title can be acquired in an automobile until the certificate of title has been issued. See id. Thus, it is that retention of the Manufacturer's Statement of Origin does not evidence a clear intention that title remain in Wood. Instead, we hold that title passed when the cars were picked up by or delivered to the individual owners.
Wood's third contention is that the Bank has neither a valid nor enforceable security interest in any of these automobiles insofar as the Bank was the transferee of the notes and security agreements from UMA, which Wood contends had no interest in the notes and instruments. Wood cites Tit. 7A, § 3-201 Code 1940 (§ 7-3-201 Code 1975) for this proposition. Wood's argument is erroneous. We have already held that title had passed to the owners and therefore they could grant UMA a security interest in the vehicles, which UMA, in turn could assign to the Bank. See Tit. 7A, § 2-401 supra.
Having disposed of the major contentions on this appeal, we turn to several ancillary contentions raised for a brief discussion.
Wood further contends the Bank is guilty of "fraud" in that it acted in concert with UMA to suppress material facts from Wood. We cannot agree with this contention nor will the evidence support any such theory.
Wood finally contends it is entitled to recover the amounts the Bank deposited into UMA's general account by virtue of its alleged status as a "third party beneficiary." In Alabama, for a contract to be for the benefit of a third person, the contract must have been intended for the direct benefit of the third person, as distinguished from mere incidental benefit to him. Harris v. Board of Water and Sewer Commissioners of theCity of Mobile, 294 Ala. 606, 320 So.2d 624 (1975). In the case at bar, however, it is clear that the arrangement between the Bank and UMA was not intended for the direct benefit of Wood. Rather, the agreement was to be for the mutual benefit of the Bank and UMA. Moreover, the cases Wood cites for this proposition do not support it. Nor, does the evidence support Wood in this respect.
Having answered the pertinent contentions raised on this appeal and for the foregoing reasons, this case is due to be, and is, hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.