880 So.2d 1123 (2003)
Robert L. STEELE
v.
Maxine WALSER.
1020652.
Supreme Court of Alabama.
October 31, 2003.
*1124 H.E. Nix, Jr., and M. Todd Russell of Nix Holtsford Gilliland Higgins & Hitson, P.C., Montgomery, for appellant.
*1125 Joseph C. McCorquodale III of McCorquodale & McCorquodale, Jackson, for appellee.
HARWOOD, Justice.
Maxine Walser sued Robert L. Steele, president of S.S. Steele and Company, Inc. (hereinafter "the company"), alleging fraud, mental anguish, and emotional distress arising from the construction of a new house. Steele filed a "Motion to Dismiss and Compel Arbitration," with supporting evidentiary submissions. Walser filed a response in opposition, and Steele filed a reply to Walser's opposition. The trial court entered an order denying Steele's motion, stating, in relevant part:
"Upon consideration thereof, the Court is of the opinion that the acts complained of in the Complaint in this action do not substantially [a]ffect interstate commerce sufficiently to invoke the Federal Arbitration Act as discussed in length in Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999); Sisters of the Visitation v. Cochran Plastering Company, Inc., 775 So.2d 759 (Ala.2000); McConnell Automotive Corp. v. Jackson, [849 So.2d 159] (Ala. 2002). It is therefore,
"Ordered and adjudged that defendant's motion to dismiss and compel arbitration is hereby denied."
The standard of review for the denial of a motion to compel arbitration is well settled. This Court stated in SouthTrust Bank v. Ford, 835 So.2d 990, 993 (Ala.2002) (quoting American General Finance, Inc. v. Morton, 812 So.2d 282, 284 (Ala.2001)):
"`This Court reviews the denial of a motion to compel arbitration de novo. Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala.1999); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1172 (Ala.1999). The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially[[1]] affecting interstate commerce. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999).... "[A]fter a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (opinion on application for rehearing) (Ala.1995).'"

I. Facts

The record reveals that Walser entered into a contract with the company for the construction of a new house (hereinafter *1126 "the construction and sales contract").[2] Steele stated in his affidavit, which was filed with his motion to dismiss and to compel arbitration, that the company, an Alabama corporation, "is in the business of constructing new homes, and constructing and selling trusses and garage kits." The construction and sales contract was signed by Steele and Walser, and it contained an arbitration clause, which stated:
"Any controversy or claim arising out of or relating to this contract or any other agreement relating in any way to the matters addressed in this contract, or the breech [sic] thereof, and any controversy or claim arising out of any other document or representation relating to the construction and purchase of the purchaser's home, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its commercial arbitration rules, and judgment on the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof."
Steele stated in his affidavit that "[t]he construction of Ms. Walser's home involved many materials that were purchased from out of state companies, and which were transported to Alabama from those companies." He stated in his affidavit that those materials included: steel strappings, eave strips, felt disks, and rafter ties purchased from Jacksonville, Florida; truss plates purchased from Pompano Beach, Florida; lumber, shutters, wire mesh, lap siding, nails, bath accessories, and doorstops purchased from Atlanta, Georgia; prime trim, lumber, and vent hoods purchased from Charlotte, North Carolina; wall ties purchased from Orlando, Florida; sheathing purchased from Dallas, Texas; lumber purchased from Laurel, Mississippi; waterproofing membrane purchased from Jefferson, Louisiana; columns purchased from Russia, Ohio; strapping for transport purchased from Jackson, Mississippi; and windows purchased from Woodville, Texas. Steele stated in his affidavit that the construction of Walser's house involved the use of machinery and tools purchased from out-of-state companies, including:
"(1) component saw, manufactured by Clary Corporation, located in Texas, and transported to Mobile, Alabama from Texas; (2) component saw and two truss machines, manufactured by Mitek Corporation and transported to Mobile, Alabama from Earth City, Missouri; (3) framing table, manufactured by Merrick Machine Company and transported to Mobile, Alabama from Alda, Nebraska; (4) forklifts, custom manufactured by Heister and transported to Mobile, Alabama from Danville, Illinois; (5) lumber stackers, manufactured by Kenwell Jackson Machine, Inc., and transported to Mobile, Alabama from Dallas, Texas; and (6) chopsaw, manufactured by Whirlwind and transported to Mobile, Alabama from Dallas, Texas."
Steele further stated in his affidavit that "[t]he contract with Ms. Walser also integrally involved other agreements made with either foreign corporations or corporations *1127 that do business in multiple states," including the following:
"Payment of the purchase price for the home was handled through an escrow agreement with ... Regions Bank, which upon information and belief is an Alabama corporation which does business all across the Southeast.... Ms. Walser was required as a condition of this contract to obtain homeowners insurance, which she did through Nationwide Insurance Company, which is a foreign corporation doing business all across the United States.... As a condition of the contract, [the company] obtained a termite bond on the home with Killingsworth Pest Control, which is upon information and belief a Florida corporation with offices in various states, including Alabama."
Walser stated in her complaint that Steele represented to her that the plans for the house needed to be modified so that "water pipes would be run over the house instead of under the house, and that constructing the house in this manner would not alter or diminish the value of the home, and that the quality of living would not be altered or diminished in any way." Walser stated in her complaint that Steele knew that those representations "were false or [he] made said representations with a reckless disregard for the truth." She stated in her complaint that she relied on these representations and agreed to the modification. Walser's complaint states that she has been damaged because "the home is defective, not as presented, and is less valuable than represented."

II. Analysis

In his brief to this Court, Steele argues that "[t]he arbitration agreement clearly affects interstate commerce in that many of the components and parts used to build this particular home at issue were originally manufactured in other states and transported to Alabama...." As noted, the trial court, in its order denying Steele's motion to dismiss and to compel arbitration, concluded that the acts complained of in the complaint did not substantially affect interstate commerce sufficiently to invoke the Federal Arbitration Act.
As this Court explained in AmSouth Bank v. Dees, 847 So.2d 923, 929 (Ala.2002):
"Section 2 of the Federal Arbitration Act (`FAA'), 9 U.S.C. § 2, provides in pertinent part:
"`A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'
"Section 2 preempts conflicting Alabama law, including in particular Ala.Code 1975, § 8-1-41(3), which states that `[a]n agreement to submit a controversy to arbitration' cannot be specifically enforced."
The United States Supreme Court in Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 46 (2003), recently rejected the test we set out in Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000), which the trial court here relied on in denying Steele's motion to compel arbitration. In Citizens Bank, the Supreme Court held that debt-restructuring agreements, executed in Alabama by Alabama residents, "satisf[ied] the [Federal Arbitration Act's] `involving commerce' test," and explained:
"We have interpreted the term `involving commerce' in the FAA [Federal Arbitration Act] as the functional equivalent *1128 of the more familiar term `affecting commerce'words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Allied-Bruce Terminix Cos. [v. Dobson], 513 U.S. [265], at 273-274, 115 S.Ct. 834 [ (1995) ]. Because the statute provides for `the enforcement of arbitration agreements within the full reach of the Commerce Clause,' Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually `in commerce'that is, `within the flow of interstate commerce,' Allied-Bruce Terminix Cos., supra, at 273, 115 S.Ct. 834 (internal quotation marks, citation, and emphasis omitted).
". . . .
". . . Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice ... subject to federal control.' Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). See also Perez v. United States, 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Wickard v. Filburn, 317 U.S. 111, 127-128, 63 S.Ct. 82, 87 L.Ed. 122 (1942). Only that general practice need bear on interstate commerce in a substantial way. Maryland v. Wirtz, 392 U.S. 183, 196-197, n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) [overruled by National League of Cities v. Usery, 426 U.S. 833 (1976)]; NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37-38, 57 S.Ct. 615, 81 L.Ed. 893 (1937)."
Walser does not dispute the existence of a written contract that calls for arbitration; she argues only that "the construction [and sales] contract at issue does not substantially involve interstate commerce [so as] to trigger application of the [Federal Arbitration Act]." We therefore consider whether the contract for the construction and sale of Walser's house "involved commerce" under the formulation set out in Citizens Bank, supra. As noted, Steele's affidavit establishes that materials used to construct Walser's house were purchased from companies located in Florida, Georgia, North Carolina, Texas, Mississippi, Louisiana, and Ohio, and we can infer that those materials were necessarily transported to Alabama through other states. Steele stated that some of the machinery and tools used to construct Walser's house were purchased and transported from out-of-state companies located in Texas, Missouri, Nebraska, and Illinois. Steele also attested that: (1) the escrow agreement relating to the construction of the house was handled by Regions Bank, an Alabama corporation, "which does business all across the Southeast"; (2) Walser obtained the contractually required homeowners' insurance from Nationwide Insurance Company, "a foreign corporation doing business all across the United States"; and the company obtained the contractually required termite bond from Killingsworth Pest Control, "a Florida corporation with offices in various states." In light of these facts, we conclude that Steele has shown that the aggregate effect of the transaction evidenced by the construction and sales contract did "satisfy the [Federal Arbitration Act's] `involving commerce' test." Citizens Bank, supra.
Although we cannot affirm the trial court's order denying arbitration on the basis that the construction and sales contract does not have the required effect *1129 on interstate commerce, we are cognizant of the settled rule that an appellate court can affirm a summary judgment on any valid argument if it is developed in and supported by the record, even an argument rejected by the trial court. Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000). In light of this rule, we also consider Walser's argument that the trial court's order is due to be affirmed on the basis that the construction and sales contract containing the arbitration provision was unconscionable. Relying on American General Finance, Inc. v. Branch, 793 So.2d 738 (Ala.2000), Walser argued to the trial court, and does so again in her brief to this Court, that "the arbitration clause contained in the construction [and sales] contract should be declared void on the grounds of unconscionability." This Court stated in Conseco Finance Corp.-Alabama v. Boone, 838 So.2d 370, 373 (Ala.2002), quoting Fleetwood Enterprises, Inc. v. Bruno, 784 So.2d 277, 281 (Ala.2000), that "`[u]nconscionability is an affirmative defense, Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 415 (Ala.1999), and the party asserting the defense bears the burden of proof. Ex parte Napier, 723 So.2d 49, 52-53 (Ala.1998).'" The "`applicable standards for determining unconscionability are set forth in American General Finance [Inc. v. Branch], 793 So.2d [738] at 748 [(Ala. 2000)]whether there are (1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power.'" Gayfer Montgomery Fair Co. v. Austin, 870 So.2d 683, 688-89 (Ala.2003), quoting Leonard v. Terminix Int'l Co., 854 So.2d 529, 538 (Ala.2002).
The only aspect of the construction and sales contract that Walser asserts, in her opposition to Steele's motion to dismiss and to compel arbitration and in her brief to this Court, is "grossly favorable" to the company is the breadth of the arbitration clause. She states in her brief that the arbitration clause is "extremely broad in scope and application" because, she says, it "purports to apply to all possible claims relating to the construction of Walser's modular home."
Walser points out that this Court in American General Finance, Inc. v. Branch, 793 So.2d 738, 740 (Ala.2000), concluded that the language "`all claims, disputes, or controversies of every kind and nature between Borrower(s) and Lender shall be resolved by binding arbitration, including ... those arising out of or relating to the transaction(s) evidenced by this agreement'" satisfied the first prong of the unconscionability test. However, in American General Finance, supra, this Court did not rely solely on the breadth of the arbitration clause; rather, it noted that there were several indicia that the provisions of the contract were "so grossly favorable... as to pass the first prong" of the unconscionability test. 793 So.2d at 750. The Court identified "the breadth of the clause," "the provision purporting to invest the arbitrator with the threshold issues of arbitrability," "the provision exempting the Lenders from the duty to arbitrate and expressly reserving for them the right to try to a jury their claims against Branch up to $10,000," and the "provision purporting to limit the right of the arbitrator to award an amount `exceed[ing] five times the amount of economic loss.'" 793 So.2d at 749. (Emphasis omitted.)
Although Walser argues that the scope of the arbitration agreement in the construction and sales contract is overly broad, she makes no showing that it assigned the threshold issues of arbitrability to the arbitrator, that there was a lack of mutuality of remedies, that it set a limit on the amount the arbitrator could award, or that any other terms of the agreement *1130 were "grossly favorable" to the company. Thus, the number and degree of "grossly favorable" terms found in the contract in American General Finance are not present here.
Moreover, even if we assume, purely for the sake of further analysis, that the breadth of the arbitration clause in the construction and sales contract is so grossly favorable to the company as to pass the first prong of the unconscionability test, Walser must still present evidence showing that the company had overweening bargaining power. Although Walser stated in her opposition to Steele's motion to dismiss and compel arbitration that "[she], a simple consumer, had no meaningful opportunity to negotiate the contract terms and was forced to accept the agreement on a take-it-or-leave-it basis," she offered no evidence to support those assertions.
Walser also stated in her opposition to the motion to compel arbitration that she "is financially unable to undergo the expense of resolving her claim in accordance with [the Commercial Arbitration Rules]." In Steele's reply to Walser's opposition, he stated that his attorney contacted Walser's attorney and advised him of Steele's "willingness to pay for 2 and ½ of the arbiters.... Most recently, counsel for [Steele] ... advised [Walser's] counsel by telephone that the Defense would pay for all three arbitrators." This Court stated in Potts v. Baptist Health System, Inc., 853 So.2d 194, 206 (Ala.2002): "Alabama law does not allow a mere showing of financial hardship to invalidate an arbitration agreement."
Walser has not made the type of evidentiary showing this Court was presented with in American General Finance, supra, when it held the arbitration agreement there unconscionable. Walser has not put forth evidence demonstrating that the terms of the arbitration agreement were grossly favorable or that the company had unequal bargaining power. Therefore, she did not carry her burden in establishing that the arbitration agreement was unconscionable.
For the foregoing reasons, the trial court erred, under the rationale of the United States Supreme Court in Citizens Bank, in denying Steele's motion to dismiss and to compel arbitration. We must note, in that regard, that the Supreme Court held in Citizens Bank that in that case we likewise had erred in our understanding that a "substantial effect" analysis was in order. Nonetheless, the judgment of the trial court denying Steele's motion to dismiss and to compel arbitration must be reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, and WOODALL, JJ., concur.
STUART, J., concurs in the judgment.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
But for two reservations, I concur in the main opinion. The first reservation is that I concur only in the result of the analysis of the issue of whether the nexus of the contract with interstate commerce is sufficient for the Federal Arbitration Act to apply. The second reservation is that my concurrence is contingent on the existence and performance of the defendant's agreement to pay for all three arbitrators.
NOTES
[1] "[I]n light of the United States Supreme Court's decision in [Citizen's Bank v.] Alafabco, [539 U.S. 52, 123 S.Ct. 2037 (2003),] we no longer apply the substantial-impact-on-interstate-commerce test adopted in Sisters of the Visitation [v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000)]. As the United States Supreme Court stated, the [Federal Arbitration Act] is triggered even `"in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent a general practice ... subject to federal control.' Alafabco, 539 U.S. at 56-57, 123 S.Ct. at 2040. Therefore, a `"party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract involves a transaction affecting interstate commerce."' Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala.2001) (quoting Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala.1999))."

Huntsville Utils. v. Consolidated Constr. Co., 876 So.2d 450, 454 (Ala.2003)(footnote omitted).
[2] Walser, in her response to Steele's motion to dismiss and compel arbitration and in her brief to this Court, characterizes the house as a "modular home"; Steele stated in an affidavit that it was actually a "panelized home." He stated in his affidavit that a modular home is "a structure with completely built sections of a building with wiring, plumbing, heating and air conditioning, sheetrock, doors, carpets, cabinets, etc.[,] already installed." Steele attested that the difference between a modular home and a panelized home is that the panelized home "is exactly the same as a stick built home except our walls are constructed at our plant and delivered to the job site and nailed together...."