Facts and Procedural History
On May 5, 2006, Richard Carraway met with Myrtle Seals, the admissions coordinator of a nursing home located in Foley, owned and operated by Beverly Enterprises Alabama, Inc., doing business as Beverly Healthcare-Foley. Richard executed a number of documents on behalf of his sister, Shirley Carraway, as her authorized representative. Those documents included a "Resident Admission Agreement" ("the admission agreement") and a "Resident and Facility Arbitration Agreement" ("the arbitration agreement"). The next day, *Page 29 
Shirley Carraway was admitted into the nursing home.
The admission agreement states:
 "If the resident is unable to make decisions for himself or herself, an Agent and/or Legal Representative may be available to make certain decisions on behalf of the Resident. These terms are defined below:
 "AGENT — For the purposes of this Agreement, an Agent is a person who manages, uses, or controls funds/assets that may be legally used to pay the Resident's charges or who otherwise acts on behalf of the Resident. The Agent's financial obligations are limited to the amount of funds received or held by the Agent for the Resident. The Agent does not assume responsibility for payment of the costs of the Resident's care out of the Agent's personal funds. However, the Agent is contractually bound by the terms of this agreement and may become liable for failure to perform duties under the Agreement. THE AGENT IS REQUIRED TO SIGN THIS AGREEMENT FOR ADMISSION AND AGREES TO DISTRIBUTE TO THE FACILITY, FROM THE RESIDENT'S INCOME OR RESOURCES, PAYMENT WHEN DUE FOR ITEMS/SERVICES PROVIDED TO THE RESIDENT. The Agent is required to produce financial documentation as proof of the Resident's ability to pay for charges when due. Wherever this Agreement refers to the Resident's financial obligation under this agreement, `Resident' shall be construed to include the obligations of Agent to act on behalf of Resident.
 "LEGAL REPRESENTATIVE — For the purposes of this Agreement, Legal Representative is defined as a person recognized under State law as having the authority to make health care and/or financial decisions for the Resident. The Legal Representative may or may not be court appointed. A Legal Representative may be an attorney-in-fact acting under a durable power of attorney for health care[,] guardian, conservator, next-of-kin, or other person allowed to act for the Resident under State law. If Legal Representative status has been conferred by a court of law or through appointment by the Resident, verification of such status must be provided to the Facility at the time of Admission."
(Emphasis, capitalization, and bold type-face in original.) The admission agreement also contains the following provision:
 "SOLE AGREEMENT — This Agreement, along with any other documents attached or included by reference, is the only agreement between the Facility and parties. Changes to this Agreement are valid only if made in writing and signed by all parties. If changes in State or Federal law make any part of this Agreement invalid, the remaining terms shall stand as a valid agreement."
The arbitration agreement states that it is an agreement between Beverly Healthcare-Foley and the "`Resident' or `Resident's Authorized Representative,' hereafter collectively referred to as `Resident.'" The arbitration agreement conspicuously states that it is "NOT A CONDITION OF ADMISSION — READ CAREFULLY." The arbitration agreement states: "[U]pon execution, this Arbitration Agreement becomes part of the Admission Agreement." Just above the signature lines, the arbitration agreement states:
 "The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, *Page 30 
that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this agreement and accept its terms."
The signature line for the "Resident" has been left blank. The document provides that "[i]f the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and this provision is being signed by an authorized representative," the spaces left for "Date," "Relationship to Resident," "Signature [of Authorized representative]," and "Witness" are to be completed. Richard signed his name on the line reserved for "Authorized representative," and Myrtle Seals signed her name on the lines for "Witness" and on behalf of the facility as "Authorized representative."
On May 30, 2006, shortly after she was admitted as a resident into the nursing home, Shirley executed a durable power of attorney, naming Richard as her attorney-in-fact. Shirley died while she was a resident at the Beverly Healthcare-Foley nursing home, and Richard now seeks to bring a wrongful-death action against, among others, Beverly Enterprises Alabama, Inc., doing business as Beverly Healthcare-Foley. Beverly Enterprises Alabama, Inc., doing business as Beverly Healthcare-Foley, Beverly Enterprises Alabama, Inc., Beverly Health and Rehabilitation Services, Inc., and three of the four individual defendants ("the Beverly Enterprises defendants") moved to compel arbitration. The trial court granted that motion, and Richard now appeals that ruling.
 Issue
The issue is whether the trial court erred in finding that Richard Carraway's wrongful-death action against the Beverly Enterprises defendants is subject to the arbitration agreement.
 Standard of Review
"We review the trial court's grant or denial of a motion to compel arbitration de novo." Title Max of Birmingham, Inc.v. Edwards, 973 So.2d 1050, 1052 (Ala. 2007).
 Analysis
Richard argues that the Beverly Enterprises defendants have not met their initial burden of proving the existence of a valid arbitration agreement between Shirley Carraway and Beverly Healthcare-Foley because Shirley did not sign the arbitration agreement herself. The agreement states: "If the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and this provision is being signed by an authorized representative, complete the following." Signature lines indicating the relationship of the signatory to the resident are provided below this language. Richard contends that because he signed the arbitration agreement on Shirley's behalf, it is valid only if Shirley was physically unable to sign the agreement herself or if she was mentally incompetent.
We disagree. Just as Richard signed all the other documents relating to Shirley's admission into the nursing home on Shirley's behalf, Richard signed the arbitration agreement on Shirley's behalf expressly as an "authorized representative." Apparent authority "is implied where the principal passively permits the agent to appear to a third person to have the authority to act on [her] behalf." Treadweli Ford, Inc. v.Courtesy Auto Brokers, Inc., 426 So.2d 859, 861
(Ala.Civ.App. 1983). "It is not essential that the right of control be exercised so long as that right actually exists."Wood Chevrolet Co. v. Bank of the Southeast, *Page 31 352 So.2d 1350, 1352 (Ala. 1977). There is no evidence indicating that Shirley had any objection to Richard's acting on her behalf in admitting Shirley to the nursing home. On the contrary, the evidence suggests that Shirley approved of her brother's acting on her behalf. A few weeks into Shirley's residency at the nursing home, she executed a power of attorney, giving Richard further authority to act on her behalf. The arbitration agreement did not call for the signature of a legal representative; instead, it provided that "a person duly authorized by the Resident" could sign the agreement on the resident's behalf.
Richard next argues that the arbitration agreement is not effective because, he says, it was not "executed in accordance with . . . the [']Sole Agreement['] provisions of the Resident Admission Agreement." The "sole agreement" provision in the admission agreement states, in pertinent part: "This Agreement, along with any documents attached or included by reference, is the only agreement between the Facility and parties. Changes to this Agreement are valid only if made in writing and signed by all parties." Richard cites Blue Cross Blue Shield ofAlabama v. Woodruff, 803 So.2d 519 (Ala. 2001), as authority for his claim that the arbitration agreement violates the "sole agreement" provision. In Blue Cross, Vera Brooks had entered into a contract with Blue Cross for insurance coverage. According to its terms, the contract could "only be changed by written amendments, endorsements, and revisions signed by one of our officers and sent to [the policyholder]." Blue Cross attempted to amend the contract by adding an arbitration provision; however, there was no evidence indicating that the amended contract had been signed by one of Blue Cross's officers and had been sent to the policyholder. When a dispute arose, Blue Cross moved to compel arbitration according to the arbitration provision in the amended contract. This Court affirmed the trial court's order denying Blue Cross's motion to compel arbitration because in amending the original contract between the parties to add the arbitration provision, the drafters had not complied with the procedure set forth in the original contract for amending the contract. The arbitration provision was therefore ineffective.
The present case is readily distinguishable from BlueCross. Here, the parties complied with the requirements in the "sole agreement" provision for amending the admission agreement. Under the terms of the admission agreement, changes to the admission agreement are valid "if made in writing and signed by all parties." The arbitration agreement, a written document, was signed by both the admissions coordinator, on behalf of Beverly Healthcare-Foley, and Richard, as Shirley's authorized representative. The arbitration agreement expressly states that "[t]he parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement. . . ." Thus, neither Blue Cross nor the record supports Richard's argument that the arbitration agreement conflicts with the "sole agreement" provision in the admission agreement.
Richard's final argument is that the arbitration agreement is invalid because, he argues, it is unconscionable. In particular, Richard alleges that the arbitration agreement is unconscionable for two reasons: first, because the Beverly Enterprises defendants withheld material facts from Richard, and, second, because the actual terms of the arbitration agreement are unconscionable. This Court has stated that "`"[u]nconscionability is an affirmative defense, . . . and the party asserting *Page 32 
the defense bears the burden of proof."'" Steele v.Walser, 880 So.2d 1123 (Ala. 2003) (quoting Conseco Fin.Corp. Alabama v. Boone, 838 So.2d 370, 373 (Ala. 2002), quoting in turn Fleetwood Enters., Inc. v. Bruno,784 So.2d 277, 281 (Ala. 2000)). The test for determining whether an agreement is unconscionable is "`"whether there are (1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power."'" Steele, 880 So.2d at 1129
(quoting Gayfer Montgomery Fair Co. v. Austin,870 So.2d 683, 688-89 (Ala. 2003), quoting in turn Leonard v.Terminix Int'l Co., 854 So.2d 529, 538 (Ala. 2002)).
Richard alleges that the Beverly Enterprises defendants withheld material facts concerning the rules governing the arbitration process, including fee amounts, discovery limitations, admissibility of evidence, and damages awards. The arbitration agreement states that "all claims, disputes, and controversies . . . relating in any way to the Admission Agreement . . . shall be resolved exclusively by binding arbitration . . . in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process." This sentence references a footnote, which states: "Information about the National Arbitration Forum, including a complete copy of the Code of Procedure, can be obtained from the Forum at 800-474-2371, by fax at 651-604-6778 or toll-free fax at 866-743-4517, or on the internet at http://www.arbforum. com." In addition to the explicit reference to the arbitration terms of the National Arbitration Forum Code of Procedure and directions as to how to access those terms, the arbitration agreement expressly informs the signatory of his right to have the arbitration agreement reviewed by a lawyer:
 "The Resident understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2) that execution of this Arbitration Agreement is not a precondition to admission or the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature. If not rescinded within thirty days, this Arbitration Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility."
"There is a general duty on the part of a person to read the documents received in connection with any transaction."Brown v. St. Vincent's Hosp., 899 So.2d 227, 242
(Ala. 2004). "`"[O]rdinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby."'" Tyler v.Williams, 963 So.2d 76, 78 (Ala. 2007) (quoting GreenTree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala. 1999), quoting in turn Power Equip. Co. v. First Alabama Bank,585 So.2d 1291, 1296 (Ala. 1991)). Richard has thus failed to show that the Beverly Enterprises defendants withheld information.
Richard also claims that some of the terms set out in the National Arbitration Forum Code of Procedure are "grossly favorable" to the Beverly Enterprises defendants.Steele, 880 So.2d at 1129. He argues that the costs in initiating arbitration are exorbitant and prohibitive, that the process of selecting an arbitrator favors the Beverly Enterprises defendants and that, "[i]f the NAF Code of Procedure is read to restrict the arbitrator's authority to award punitive damages," then it is *Page 33 
unconscionable. Other than stating the terms themselves of the arbitration agreement, Richard offers no authority establishing the unreasonableness of those terms. Richard instead relies onSloan Southern Homes, LLC v. McQueen, 955 So.2d 401
(Ala. 2006). In Sloan, this Court held that the arbitration clause was not unconscionable because the party was unable to demonstrate that the terms of the arbitration clause were grossly unfavorable. Richard has failed to show that the terms of the arbitration agreement are grossly favorable to the Beverly Enterprises defendants.
Moreover, Richard has not shown that the Beverly Enterprises defendants possessed "overwhelming bargaining power."Steele, 880 So.2d at 1129. In fact, the execution of the arbitration agreement was expressly "not a condition of admission," and, under the terms of the arbitration agreement, it could have been "rescinded by written notice to the Facility from the Resident within thirty days of signature." Therefore, Richard has failed to "carry [his] burden in establishing that the arbitration agreement was unconscionable." Steele,880 So.2d at 1130.
 Conclusion
The Beverly Enterprises defendants have satisfied their burden of showing that a valid arbitration agreement exists. We conclude that the trial court did not err in granting the Beverly Enterprises defendants' motion to compel arbitration in accordance with the arbitration agreement.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.