MOORE, Chief Justice
(dissenting).
I respectfully dissent. The main opinion holds that there-is no' evidence indicating that Lorene S. Jones was mentally incompetent during her stay at the long-term care and rehabilitation facility owned and operated by Kindred Nursing Centers East, LLC, d/b/a 0791-Kindred Transitional Care and Rehabilitation-Whitesburg Gardens (“Whitesburg Gardens”) or'that she was substantially mentally impaired. The main opinion then holds that because *1158 Jones was not mentally impaired, she passively ratified the arbitration agreement signed by her daughter, Yvonne Barbour.
If Jones was mentally competent, then Whitesburg Gardens should have procured Jones’s signature instead of Barbour’s. “[Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.”’” Ex parte Cain, 838 So.2d 1020, 1026 (Ala.2002) (quoting AT & T Techs., Inc. v. Communication Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting in turn United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Jones never expressly assented to the arbitration agreement Whitesburg Gardens now seeks to enforce. Jones also did not grant Barbour actual authority to sign the agreement for her, Because Jones did not assent to the arbitration agreement, she should not be forced to arbitrate her claims.
However, the main opinion holds:
“[I]n view of the evidence indicating that Jones passively permitted Barbour to act on her behalf in signing the admission forms and the lack of evidence indicating that Jones ever objected to Barbour’s signing these forms, we hold that Barbour had the apparent authority to bind Jones at the time Barbour signed the admission documents.”
201 So.3d at 1157. In reaching this conclusion, the main opinion relies on Tennessee Health Management, Inc. v. Johnson, 49 So.3d 175, 180 (Ala.2010), which drew heavily on Carraway v. Beverly Enterprises Alabama, Inc., 978 So.2d 27 (Ala.2007). In Johnson, the Millennium Nursing and Rehabilitation Center (“Millennium”), which was operated by Tennessee Health Management, Inc. (“THM”), admitted a patient named Dolores Rousseau following hip-replacement surgery. Even though she was mentally competent when admitted to Millennium, Dolores never signed an arbitration agreement, but her daughter Barbara Rousseau signed an • arbitration agreement among the admission papers she signed for her mother. This Court held that Dolores was bound by the arbitration agreement Barbara signed, reasoning:
“Because Dolores enjoyed the ease of checking into Millennium without the requirement that she sign anything, under circumstances in which no reasonable person could consider the admission possible without the intervention of an agent to act on Dolores’s behalf, she thereby passively permitted Barbara to appear to THM to have the authority to act on her behalf, and Barbara’s apparent authority is, therefore, implied.”
Johnson, 49 So.3d at 180.
Likewise, in Carraway, Richard Carraway signed an arbitration agreement when he admitted his sister, Shirley Carraway, to a nursing home operated by Beverly Enterprises Alabama, Inc. (“Beverly Enterprises”). Richard signed the arbitration agreement as Shirley’s “authorized representative.” After Shirley died, Richard, as personal representative of Shirley’s estate, brought a wrongful-death action against Beverly Enterprises, which moved to compel arbitration. The trial court granted Beverly Enterprises’ motion, and Richard appealed. Rejecting Richard’s argument that there was no valid arbitration agreement because Shirley never signed it, this Court held:
“Just as Richard signed all the other documents relating to Shirley’s admission into the nursing home on Shirley’s behalf, Richard signed the arbitration agreement on Shirley’s behalf expressly as an ‘authorized representative.’ Apparent authority ‘is implied where the *1159 principal passively permits the agent to appear to a third person to have the authority to act on [her] behalf.’ Treadwell Ford, Inc. v. Courtesy Auto Brokers, Inc., 426 So.2d 859, 861 (Ala.Civ.App.1983), ‘It is not essential that the right of control be exercised so long as that right actually exists.’ Wood Chevrolet Co. v. Bank of the Southeast, 352 So.2d 1350, 1352 (Ala.1977). There is no evidence indicating that Shirley had any objection to Richard’s acting on her behalf in admitting Shirley to the nursing home. On the contrary, the evidence suggests that Shirley approved of her brother’s acting on her behalf. A few weeks into Shirley’s residency at the nursing home, she executed a power of attorney, giving Richard further authority to act on her behalf. The arbitration agreement did not call for the signature of a legal representative; instead, it provided that ‘a person duly authorized by the Resident’ could sign the agreement on the resident’s behalf.”
Carraway, 978 So.2d at 30-31.
Thus, as to the issue of apparent authority, both Carraway and Johnson held that apparent authority existed because the patients did not object to the arbitration agreement after being admitted in the rehabilitation centers. Before Carraioay and Johnson, we had held:
“The doctrine of apparent authority is based upon the actions of the principal, not those of the agent; it is based upon the principal’s holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent’s authority might be or what the agent holds out his authority to be.”
Malmberg v. American Honda Motor Co., 644 So.2d 888, 891 (Ala.1994). There was no evidence in either Carraway or in Johnson indicating that the patients had taken any actions at the time the arbitration agreements were signed that would reasonably lead the health-care facilities to believe that .the patients’- relatives were acting as the patients’ agents. I therefore believe Carraway and Johnson were erroneously, decided and should not be followed in this case.
The Supreme Judicial Court of Massachusetts rejected Carraway for similar reasons in the recent case of Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 2 N.E.3d 840 (2014). In Licata, GGNSC Malden Dexter LLC (“GGNSC”) operated a nursing-home facility, to which Rita Licata wás admitted. Rita did not sign any admission documents; the admission documents were signed by her son, Salvatore Licata, Jr., who held himself out as Rita’s representative. One of the documents included an arbitration agreement. While Salvatore was signing the papers, GGNSC’s admissions director told Rita, who was in another room, that Salvatore was “signing papers for her and would discuss them with her later.” Licata, 466 Mass. at 794, 2 N.E.3d at 842. However, Rita “ ‘did not appear to understand and did not respond.’ ” Id. Rita eventually died from injuries she sustained while in GGNSC’s care.
Salvatore, as the personal representative of Rita’s estate,, then brought a wrongful-death action against GGNSC. GGNSC moved to compel arbitration. Salvatore objected, arguing that Rita never agreed to arbitrate. The Supreme Judicial Court of Massachusetts agreed with Salvatore. Rejecting GGNSC’s argument that Salvatore had the apparent authority to bind Rita, the court reasoned that there was “no conduct by Rita to support its claim that Salvatore had apparent authority to sign the arbitration agreement.” Licata, 466 Mass. at 802, 2 N.E.3d at 847. The court further noted:
*1160 “As support for the claim that Rita’s silence indicated passive assent to Salvatore’s authority, GGNSC relies on opinions of the Alabama Supreme Court. See Carraway v. Beverly Enters. Ala., Inc., 978 So.2d 27, 30-31 (Ala.2007) Owens v. Coosa Valley Health Care, Inc., 890 So.2d 983, 987 (Ala.2004). To the extent these eases suggest that a patient may through silence alone consent to actions of which the patient lacks knowledge, we disagree.”
Licata, 466 Mass. at 802 n. 6, 2 N.E.3d at 847 n. 6.[1] I agree with the Licata court.
In conclusion, I believe the main opinion in the present case, like Carraway and Johnson, impermissibly stretches the doctrine of apparent authority beyond its proper scope. Instead of placing a duty on Jones to inquire whether someone signed an arbitration agreement for her, this Court should have placed the duty on Whitesburg Gardens to procure Jones’s signature. As to the issue of apparent authority, I see no evidence indicating that Jones took any actions that would lead Whitesburg Gardens to reasonably believe that Barbour was authorized to act as Jones’s agent. Thus, I see no evidence indicating that Jones assented, either directly or through an agent, to the arbitration provision. Because I do not believe that Jones assented to an arbitration agreement, I do not find that any arbitration agreement existed.[2] I therefore respectfully dissent.

. I continue to hold to my view that predis-pute arbitration agreements are unenforceable. See, e.g., American Bankers of Florida v. Tellis, 192 So.3d 386, 395 (Ala.2015) (Moore, C.J., dissenting). Nevertheless, it is unnecessary to inquire in this case whether the arbitration agreement was enforceable because I believe the arbitration agreement was nonexistent.