[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10730

_____

D.C. Docket No. 2:10-cv-00557-WKW-TFM

THOMAS ARTHUR ENTREKIN,
as Executor of the Last Will and
Testament of Edith L. Entrekin, Deceased,

Plaintiff - Appellee,

versus

INTERNAL MEDICINE ASSOCIATES OF DOTHAN, P.A.,
CALVIN L. REID,
M.D.,

Defendants,

WESTSIDE TERRACE, LLC,
d.b.a. Westside Terrace Health &
Rehabilitation Center,
TURENNE & ASSOCIATES, LLC,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(August 9, 2012)

Before CARNES and HULL, Circuit Judges, and ROTHSTEIN,* District Judge.

CARNES, Circuit Judge:

When Edith Entrekin was admitted to a nursing home in Dothan, Alabama, she signed a contract requiring the arbitration of "all claims or disputes" that she or the executor of her future estate might have against the nursing home. After Entrekin died, the executor of her estate brought an action against the nursing home for damages under Alabama's wrongful death statute, Ala. Code § 6-5-410. The district court denied the nursing home's motion to compel arbitration. This appeal by the nursing home brings us this Alabama law issue: Does a decedent's agreement with a nursing home to arbitrate any claims that she or her executor might have in the future against the nursing home bind her executor to arbitrate a wrongful death claim against the nursing home?[1]

I.

The facts framing the legal issue are not disputed. After suffering a major heart attack, Entrekin was treated at two hospitals and then transferred for further recovery to Westside Terrace Health & Rehabilitation Center, a nursing home in

---

* Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

[1] For simplicity, throughout this opinion we use the term "executor" to refer to administrators, executors, and personal representatives of estates.

Dothan, Alabama.  When Entrekin was admitted to Westside Terrace, she and a representative of the nursing home signed a "Dispute Resolution Agreement." Part 1 of that agreement provides:

> This Agreement creates a dispute resolution program (the "Program") which shall govern the resolution of <u>any and all claims or disputes</u> that would constitute a cause of action in a court of law <u>that the</u> Facility may have now or in the future against Resident, or that the Resident or the <u>Resident's</u> estate, successors, assigns, heirs, personal representatives, <u>executors</u>, and administrators <u>may have</u> now or <u>in the future against the Facility</u> . . . , or that any other person may have arising out of or relating in any way to the Resident's stay at the Facility (hereinafter referred to as "Disputes").  The Disputes whose resolution is governed by the Program shall include, but not be limited to, claims for breach of contract or promise (express or implied); tort claims; and claims for violation of any federal, state, local, or other governmental law, statute, regulation, common law, or ordinance.

(Emphasis added.)

Part 3 of the Dispute Resolution Agreement states in bold font that "All Disputes shall be resolved by binding arbitration."  Part 4 contains a "delegation clause," which states that "[t]he arbitrator(s), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, formation, or scope of this Agreement."  Part 6 provides that the "[Dispute Resolution] Agreement shall survive the death of the Resident . . . and shall apply to all Disputes whether they

3

arise or are asserted before, during, or after the Resident's stay at the Nursing Home." The agreement also states that it "shall be interpreted, construed and enforced pursuant to and in accordance with the laws of Alabama."

Ten days after signing the Dispute Resolution Agreement and while still a resident of Westside Terrace, Entrekin suffered another major heart attack and died. The executor of her estate later filed this lawsuit against Westside Terrace,[2] seeking damages under Alabama's wrongful death statute. The complaint alleges that Westside Terrace negligently failed to treat Entrekin's heart condition, which "resulted in her untimely, needless, and avoidable death."

After answering the executor's complaint and denying any liability, Westside Terrace filed a motion to compel arbitration. It contended that the executor's wrongful death claim fell within the scope of the Dispute Resolution Agreement between Entrekin and Westside Terrace. Even though the executor did not personally sign the agreement, Westside Terrace argued that because Entrekin had bound herself to the terms of the agreement the executor of her estate was also bound by them.

In his response to the motion to compel arbitration, the executor admitted

---

[2] The complaint also named Westside Terrace's parent company, Turenne & Associates, LLC, as a defendant, but for simplicity we refer to both defendants as "Westside Terrace."

that Entrekin had signed the Dispute Resolution Agreement, but he argued that at the time she did so the wrongful death claim was not her claim or the claim of her estate because at that time neither the claim nor her estate existed. And because the wrongful death claim never belonged to Entrekin or her estate (a matter of Alabama of law that we will discuss later), she never had the authority to sign a contract requiring arbitration of the claim.

The district court denied Westside Terrace's motion to compel arbitration. It acknowledged that the Alabama Supreme Court has consistently compelled arbitration of wrongful death claims against nursing homes when there was an arbitration agreement between the nursing home and the decedent. But all of those decisions were distinguishable, the court thought, because in them the agreements had not been signed by the decedent herself. Instead, as the court viewed those cases, the agreements had been signed by "personal representatives [who] not only signed on behalf of the resident to arbitrate the resident's or the resident's estate's claims, but they also signed on their own behalf to arbitrate any wrongful death claim they may bring in the future as personal representative." In this case, by contrast, only the resident (Entrekin) had signed the Dispute Resolution Agreement. That was enough of a difference, the district court thought, to distinguish the decisions enforcing arbitration agreements from the case at hand

5

and to justify a different result.

The district court also described what it called a "conflict" in Alabama case law. There are some decisions, the court noted, holding that "wrongful death claims do not belong to a decedent." Yet, there are other decisions holding that if an arbitration agreement signed by a nursing home resident's personal representative binds that resident while she is alive, that agreement will also bind her executor to arbitrate a wrongful death claim arising from her death. The perceived paradox is that under Alabama law an agreement can be entered on behalf of a nursing home resident requiring her executor to arbitrate a claim that will never belong to that resident.

The district court thought that the way to resolve this "conflict" is to view a personal representative who signs an arbitration agreement on behalf of a nursing home resident who is still alive as signing not only for the resident but also for the representative himself in his anticipated capacity as executor of the estate. In that way, a personal representative's single signature could bind both the decedent-to-be and the executor-to-be—provided, of course, that the personal representative becomes the executor, which will not always be the case.

Under that interpretation of Alabama case law, because the executor of Entrekin's estate had not signed the arbitration agreement, he was not bound by it.

6

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed . . . to submit." AT&T Techns., Inc v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 1418 (1986) (quotation marks omitted). That is the basis on which the district court denied Westside Terrace's motion to compel arbitration of the executor's wrongful death claim.[3]

## II.

"We review de novo the district court's denial of a motion to compel arbitration." Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011). Because "arbitration is a matter of contract," Rent-A-Center, W., Inc. v. Jackson, — U.S. —, 130 S.Ct. 2772, 2776 (2010), determining whether a claim falls within the scope of an arbitration agreement "is generally a matter of state law," Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., — U.S. —, 130 S.Ct. 1758, 1773 (2010). As a result, when considering whether the arbitration agreement at issue in this case requires the parties to arbitrate the executor's wrongful death claim, we "apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct.

---

[3] Westside Terrace does not challenge other rulings of the district court, including its ruling that pre-dispute arbitration agreements are not void as against public policy in Alabama, and its ruling that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., preempts Ala. Code § 6-5-485. Because any challenges to those rulings have been abandoned, we express no view on them. See, e.g., Zivojinovich v. Barner, 525 F.3d 1059, 1062 n.1 (11th Cir. 2008); Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1259 n.1 (11th Cir. 2007).

1920, 1924 (1995).

The Dispute Resolution Agreement states that it "shall be interpreted, construed and enforced pursuant to and in accordance with the laws of Alabama," so we look to decisions of the Alabama Supreme Court to determine if the district court should have compelled arbitration of the wrongful death claim in this case. "The final arbiter of state law is the state supreme court, which is another way of saying that Alabama law is what the Alabama Supreme Court says it is." Blue Cross & Blue Shield of Ala., Inc. v. Nielsen, 116 F.3d 1406, 1413 (11th Cir. 1997); accord Montana v. Wyoming, — U.S. —, 131 S.Ct. 1765, 1773 n.5 (2011) ("The highest court of each State . . . remains the final arbiter of what is state law." (quotation marks omitted)); West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236, 61 S.Ct. 179, 183 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

## A.

Before we turn to the issue of Alabama law at the heart of this case, we address Westside Terrace's contention that under the Dispute Resolution Agreement's "delegation clause" the district court should have let an arbitrator decide the issue of arbitrability. Appellant Br. 31–33. This contention comes too

8

late.  Westside Terrace never asked the district court to rule that an arbitrator should decide arbitrability, and "[i]t is well settled that issues not raised in the district court in the first instance are forfeited."  Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1152 (11th Cir. 2011).

Westside Terrace contends that it did not forfeit its delegation clause argument for three reasons, none of which is persuasive.  First, Westside Terrace argues that it "invoked all provisions of the [Dispute Resolution Agreement] when it moved to compel arbitration" in the district court because it attached a copy of the agreement to its motion.  Appellant Reply Br. 8.  If arguments were people, this one would be so feeble that it would need nursing care.  Attaching a contract to a motion does not raise every argument that could be made under the contract any more than attaching a contract to a complaint pleads every claim that could be made under the contract.  The way to make an argument in a motion is by making an argument in the motion.  The only arguments that Westside Terrace made in its motion were about whether the arbitration agreement covers the wrongful death claim; it made no argument about whether the court or an arbitrator should make that decision.

Westside Terrace's second non-forfeiture argument is that, "at the time of filing its arbitration motion, [it] was not aware that the District Court would be

9

assessing the issue of arbitrability." Appellant Reply Br. 8. The problem with this argument is that the relief Westside Terrace sought in its motion was an order compelling "submission of all of the Plaintiff's claims and causes of action against Westside Terrace . . . to arbitration," not an order compelling submission of the issue of arbitrability to an arbitrator. By asking the court to send the claim to arbitration, the motion at least implicitly asked the court to decide that the claim is arbitrable. Even after the executor filed a response urging the court to deny the motion because the claim is not arbitrable, Westside Terrace did not suggest that the issue of arbitrability should be resolved by an arbitrator. Nor did it do so after the court decided that the claim is not arbitrable.

Finally, Westside Terrace argues that because we review de novo an order denying a motion to compel arbitration, "this Court has the ability to review and rely on all materials submitted to the District Court, which would include the entire [Dispute Resolution Agreement] containing the delegation clause." Appellant Reply Br. 9. This argument tries to transform a standard of review into a license to litigate issues for the first time on appeal. The definition of "de novo" is "anew," but that term describes how we review legal issues that were presented to and decided by the district court; it does not describe how legal issues are to be framed on appeal. "De novo" is not Latin for "don't bother" with raising issues in

10

the district court.  See Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1352 (11th

Cir. 2009) ("Because the issue . . . was not properly presented to the district court,

we will not decide it."); Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994)

("[W]e have repeatedly held that an issue not raised in the district court and raised

for the first time in an appeal will not be considered by this court." (quotation

marks omitted)); Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991) ("We

have long held that an issue not raised in the district court and raised for the first

time in an appeal will not be considered by this court.").

### B.

We now turn to the Alabama law issue at the heart of this case:  whether the

Dispute Resolution Agreement between Entrekin and Westside Terrace requires

the executor of her estate to arbitrate the wrongful death claim.  The executor is

seeking damages from Westside Terrace under Alabama's unique wrongful death

statute, which provides:

> A personal representative may commence an action and recover such
> damages as the jury may assess in a court of competent jurisdiction
> within the State of Alabama . . . for the wrongful act, omission, or
> negligence of any person, persons, or corporation, his or her or their
> servants or agents, whereby the death of the testator or intestate was
> caused, provided the testator or intestate could have commenced an
> action for the wrongful act, omission, or negligence if it had not
> caused death.

11

Ala. Code § 6-5-410(a).  This statute is "the sole remedy for the tortious infliction of death" in the state of Alabama, King v. Nat'l Spa & Pool Inst., Inc., 607 So. 2d 1241, 1248 (Ala. 1992), and plaintiffs bringing actions under it may recover "only punitive damages," Black Belt Wood Co. v. Sessions, 514 So. 2d 1249, 1262 (Ala. 1986); accord Young v. Bryan, 445 So. 2d 234, 238 (Ala. 1983) ("[I]t is axiomatic that the only damages recoverable under Alabama's Wrongful Death Statute are punitive in nature." (citation omitted)).

Before the Alabama legislature enacted the wrongful death statute, personal injury actions did not survive the death of the injured party, making it cheaper for a defendant to kill someone than to leave the victim alive and injured.  Pace v. Armstrong World Indus., Inc., 578 So. 2d 281, 283 (Ala. 1991).  To eliminate that moral hazard, the legislature "created a new cause of action" that arises "upon the death of the injured party" and vests in the decedent's "personal representative." Id.; see also Wood v. Wayman, 47 So. 3d 1212, 1216 (Ala. 2010); Henderson v. MeadWestvaco Corp., 23 So. 3d 625, 629 (Ala. 2009) (stating that the wrongful death statute "creates a distinct cause of action which comes into being only upon death from wrongful act"); Geohagan v. Gen. Motors Corp., 279 So. 2d 436, 439 (Ala. 1973).  Executors of estates, like the plaintiff in this case, are "personal representatives" within the meaning of the statute.  Waters v. Hipp, 600 So. 2d

12

981, 982 (Ala. 1992); see also Hatas v. Partin, 175 So. 2d 759, 761 (Ala. 1965) ("The words 'personal representative' . . . when used in this statute . . . can only mean the executor or administrator . . . .").

Because a wrongful death claim arises after a wrongful death and "vest[s] in the personal representative alone," Holt v. Stollenwerck, 56 So. 912, 913 (Ala. 1911), it follows that the claim does not belong to the decedent or her estate, see Kennedy v. Davis, 55 So. 104, 105 (Ala. 1911) ("So far as the right of action is concerned, the statute vests it exclusively in the personal representative; but, so far as the property right in the damages is concerned, the statute vests it exclusively in the distributees of [the] intestate.  The damages are not assets of the estate . . . ."); Ivey v. Wiggins, 159 So. 2d 618, 619 (Ala. 1964) ("The [wrongful death] cause of action here sued on . . . . never did belong to the intestate; the statute creates it only upon his wrongful death.").  And because neither the decedent nor her estate ever owned the wrongful death claim, it would seem to follow that a decedent cannot bind the entity that would later own the claim to arbitrate (the executor).  But things are not always as they seem.

The Alabama Supreme Court—"[t]he final arbiter of state law" in Alabama, Nielsen, 116 F.3d at 1413—has decided four cases involving whether a decedent can contractually bind the executor of her estate to arbitrate a wrongful death

13

claim. Those decisions establish that an executor is bound by the same contracts that bound the decedent while she was alive, including an arbitration agreement.

The first decision on this subject is Briarcliff Nursing Home, Inc. v. Turcotte, 894 So. 2d 661 (Ala. 2004) (per curiam). In that case, the "'fiduciary parties'" for two nursing home residents signed on behalf of those residents admissions contracts containing mandatory arbitration provisions. Id. at 663. When the residents died, the fiduciary parties became executors of the estates and filed wrongful death claims against the nursing home.[4] Id. The nursing home moved to compel arbitration of the claims, and the executors opposed the motion "on the grounds that neither of them, in their capacities as executor . . . , had signed or had otherwise entered into the admission contracts." Id. The executors argued that they had signed the contracts as fiduciary parties for the residents, and for that reason the arbitration provisions in the contracts bound only the residents and not the executors. Id.

The Briarcliff Court rejected the executors' arguments and compelled arbitration of the wrongful death claims. Id. at 668. It held that the arbitration agreements bound the deceased residents because the fiduciaries had signed the

_____

[4] Technically, one plaintiff became an "administratrix" and the other became an "executor," but as we explained above, see supra note 1, we are not distinguishing between the two terms.

14

agreements on behalf of those residents, and because the residents were bound by

the agreements so too were the executors of their estates:

> We recognize that an [executor] of a decedent's estate stands in the shoes of the decedent. We also recognize that the powers of an executor, in collecting the debts constituting the assets of the estate, are just as broad as those of the deceased. For the same reason the powers of an executor or an administrator encompasses [sic] all of those formerly held by the decedent, those powers must likewise be restricted in the same manner and to the same extent as the powers of the decedent would have been. <u>Thus, where an executor or administrator asserts a claim on behalf of the estate, he or she must also abide by the terms of any valid agreement, including an arbitration agreement, entered into by the decedent</u>.
> Therefore, in this case, [the executors] are bound by the arbitration provisions contained in the admission contracts.

<u>Id.</u> at 665 (alterations, quotation marks, and citation omitted) (emphasis added).

Put another way, an executor's wrongful death claim falls within the scope of a

valid arbitration agreement between a nursing home and a decedent.[5]

---

[5] Two justices disagreed with the result and the majority's holding in <u>Briarcliff</u> that an executor bringing a wrongful death claim against a nursing home must arbitrate that claim if the decedent was bound by an arbitration agreement with the nursing home. Justice Johnstone argued in his dissenting opinion that the majority's rule is inconsistent with another rule of Alabama law that a wrongful death claim does not belong to the decedent or her estate but instead vests exclusively in the personal representative (the executor) of the estate:

> Because a wrongful death action does not derive from the rights of a decedent, because the right to bring a wrongful death action accrues to and belongs to the personal representative of a decedent, not to the estate of the decedent, and because the right to bring a wrongful death action arises only after the death, a living person is without authority to bind his or her future personal representative to arbitrate that personal representative's claim for wrongful death.

894 So. 2d at 671 (Johnstone, J., dissenting).

15

The Alabama Supreme Court applied its Briarcliff holding three years later in Carraway v. Beverly Enterprises Alabama, Inc., 978 So. 2d 27 (Ala. 2007). In that case, the brother of a nursing home resident signed a number of documents on behalf of his sister as her "authorized representative." Id. at 28. One of those documents was an arbitration agreement. Id. When the sister died, the brother became executor of her estate and sued the nursing home for wrongful death. See id. at 30. The nursing home moved to compel arbitration. Id. The brother, as executor, responded that the nursing home did not meet its "initial burden of proving the existence of a valid arbitration agreement" between his sister and the nursing home "because [she] did not sign the arbitration agreement herself." Id. He contended that his signature "on behalf of" his sister did not bind her because

---

Justice Woodall also dissented in the Briarcliff case on similar grounds. Id. at 672 (Woodall, J., dissenting). He argued that the majority's reasoning is inconsistent with the rule of Alabama law that plaintiffs who bring wrongful death claims are not suing "on behalf of the estate," but are instead suing on behalf of the decedent's statutory heirs. See Ala. Code § 6-5-410(c) ("The damages recovered [in a wrongful death action] are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.").

Those two dissenting opinions failed to persuade a majority of justices on the Alabama Supreme Court. The six justices in the Briarcliff majority held that, notwithstanding the peculiar nature of a wrongful death claim in Alabama, an executor bringing such a claim is bound by an arbitration agreement that would have bound the nursing home resident to arbitrate any claims she had while alive. Regardless of whether it is in tension with another aspect of Alabama law, or how great the tension might be, the majority holding in Briarcliff is Alabama law. The dissenting opinions are not. We are bound to follow the Briarcliff holding.

she was competent at the time he signed the agreement.  See id.

The Carraway Court rejected the brother's argument because there was no evidence indicating that his sister had any objection to his acting on her behalf in signing the arbitration agreement.  Id. at 31.  The brother was an authorized agent of the sister and, absent some evidence undermining his authority, his actions were legally binding on the sister.  Id. at 30–31.  For that reason, the sister was bound by the agreement, and the brother in his capacity as the executor of his sister's estate was also bound by it, requiring him to arbitrate the wrongful death claim against the nursing home.  Id. at 30, 33.  Carraway reapplies and reaffirms the holding of Briarcliff:  an executor suing a nursing home for wrongful death is bound by an arbitration agreement that binds the decedent.

There was another decision on the subject, which the Alabama Supreme Court issued between its Briarcliff and Carraway decisions.  That decision is Noland Health Services, Inc. v. Wright, 971 So. 2d 681 (Ala. 2007).  The plurality opinion in Noland creates a wrinkle in the otherwise well-pressed fabric stitched together in the Briarcliff and Carraway decisions, but it is an easy wrinkle to iron out.  In Noland, a woman named Willis, who was suffering from dementia, was admitted to a nursing home by her daughter-in-law.  971 So. 2d at 683.  During the admissions process, the daughter-in-law filled in a form contract containing an

17

arbitration clause.  See id. at 683–84.  She wrote Willis' name in the space for "Resident."  Id. at 683.  She left blank the space for designating the "Resident's Legal Representative."  Id.  And she signed her own name in the space for "Resident's Responsible Party."  Id.

A couple of months after Willis was admitted to the nursing home, she fell and broke her hip.  Id. at 684.  Willis, through her son and daughter-in-law as her "next friends," sued the nursing home for, among other things, "negligent and wanton conduct."  Id.  Willis died about a week after the lawsuit was filed.  Id.  The executor of her estate, a third party, was substituted as the plaintiff in the lawsuit and amended the complaint to add a wrongful death claim.  Id. at 684, 687.  The nursing home filed a motion to compel arbitration, which the trial court denied, and the nursing home appealed to the Alabama Supreme Court.  Id. at 684.

The Noland Court affirmed the trial court's denial of the nursing home's motion to compel arbitration.  Id. at 690.  The plurality opinion explained that the "dispositive issue on appeal is whether [the nursing home] has met its burden of showing the existence of a contract requiring arbitration of the claims asserted in this action."  Id. at 685.  The nursing home contended that the executor was bound by the arbitration agreement between Willis and the nursing home "notwithstanding the fact that [Willis] did not personally sign it."  Id. (quotation

18

marks omitted). The nursing home's position was that because the daughter-in-law had signed the agreement on Willis' behalf, the agreement was legally binding on Willis and also on the executor who was pursuing the wrongful death claim. Id. The executor countered that the daughter-in-law's signature on the contract as the "'responsible party'" could not bind Willis to the agreement and, therefore, did not bind the executor insofar as the wrongful death claim was concerned. Id.

The three-member Noland plurality agreed with the executor. Id. It held that Willis was not bound by the arbitration agreement because her daughter-in-law did not sign Willis' name on the contract; she only wrote Willis' name in the blank space to identify her as the "Resident" being admitted to the nursing home. Id. at 686. Nor did the daughter-in-law sign in the space for "Legal Representative" (which she left blank); she signed only in the space for "Responsible Party." Id. By signing as Willis' "Responsible Party," the plurality reasoned, the daughter-in-law's "signatory role was . . . effectively that of a 'next friend,'" and "[i]t has long been established in [Alabama] . . . that one who purports to act merely as a 'next friend' of a 'non compos mentis' is wholly without authority to make any contract that would bind [the decedent] or her estate." Id. (quotation marks omitted). For that reason, the daughter-in-law's signature on the contract "was ineffective to bind [Willis] or her personal

19

representative to the agreement." Id.

So far, everything we have said about the Noland plurality opinion is consistent with the holdings of the Briarcliff and Carraway decisions. The decedents in Briarcliff and Carraway were bound by an arbitration agreement, and so their executors were required to arbitrate the wrongful death claims in those two cases. By contrast, the decedent in Noland was not bound by an arbitration agreement with the nursing home, and so the executor in that case was not required to arbitrate the wrongful death claim. If we freeze the frame here, the pivot point in all three decisions appears to be whether the decedents themselves were bound by the agreements to arbitrate. Indeed, part of the Noland plurality opinion recognizes this point as one of the "fundamental" ways that case differs from the Briarcliff case. Noland, 971 So. 2d at 687 (stating that because the Noland executor "specifically challenges the efficacy of [the daughter-in-law's] signature to bind Dorothy Willis," the case was "unlike" Briarcliff).

We cannot freeze the frame there, however, because the Noland plurality opinion did not stop there. The plurality opinion went on to distinguish that case from Briarcliff in another "fundamental"—its word—way by pointing out that the two executors in Briarcliff "were signatories to an agreement to arbitrate," having signed as "personal representatives," while the executor in Noland had not signed

20

the agreement at all.  Id.  According to the Noland plurality, that difference distinguishes the executors in Briarcliff (signatory personal representatives) from the executor in Noland ("a nonsignatory personal representative").  Id. at 687, 690.

This part of the Noland plurality opinion, the positing of a second distinction between that case and the Briarcliff and Carraway cases, is where the wrinkle arises.  That second distinction appears to rest on the novel premise that an agent who signs a contract on behalf of a principal binds not only the principal but also the agent himself in another capacity—even if the agent has not yet acquired that other capacity (e.g., an executor who is not yet an executor because the decedent-to-be is not yet deceased).[6]  That is the same premise that the district court relied on in denying Westside Terrace's motion to compel arbitration.

---

[6] Although not necessary to our analysis, it is at least relevant to note that the Noland plurality's second premise is inconsistent with the well-established law of Alabama that individuals serving in one legal capacity cannot, through their actions in that capacity, bind themselves in a different legal capacity.  The Alabama Supreme Court has held a number of times that a contract signed by an agent on behalf of a principal does not bind the agent.  See, e.g., Clement Contracting Grp., Inc. v. Coating Sys., L.L.C., 881 So. 2d 971, 975 (Ala. 2003) ("[S]igning the contract on behalf of [a principal does] not make [the agent] a signatory to the contract in his individual capacity." (emphasis added)); Willis v. Parker, 814 So. 2d 857, 864 (Ala. 2001) ("[W]hen an agent, acting within his real or apparent authority, enters a contract on behalf of his principal, only the principal is bound and subject to suit on the contract." (quotation marks omitted)); Lee v. YES of Russellville, Inc., 784 So. 2d 1022, 1027 (Ala. 2000) ("An agent acting with actual or apparent authority who enters a contract on behalf of a principal binds the principal but not himself."); see also Dare Prods., Inc. v. Alabama, 574 So. 2d 847, 849 (Ala. Civ. App. 1990) ("[W]hen an agent, acting within his real or apparent authority, enters into a contract on behalf of the principal, then only the principal is bound and subject to suit on the contract.").

21

Applying that premise here would lead to the conclusion that the executor is not bound by the agreement that Entrekin signed because the executor himself did not sign it.

We are not bound to apply that premise from the <u>Noland</u> plurality opinion, however, because it is only a plurality opinion. Three justices of the nine-member court joined that opinion, but twice as many justices did not.[7] The Alabama Supreme Court has held that "[a]s a 'hornbook' principle of practice and procedure, no appellate pronouncement becomes binding on inferior courts unless it has the concurrence of a majority of the Judges or Justices qualified to decide the cause." <u>Ex parte State ex rel. James</u>, 711 So. 2d 952, 964 (Ala. 1998); <u>accord</u> <u>Prince v. State Dep't of Revenue</u>, 55 So. 3d 273, 284 (Ala. Civ. App. 2010) (holding that a plurality opinion "does not constitute binding authority"); <u>Waddell v. Waddell</u>, 904 So. 2d 1275, 1285 (Ala. Civ. App. 2004) (holding that a plurality

---

[7] Justice Woodall wrote the lead opinion and was joined by Justices Cobb and Parker. <u>Noland</u>, 971 So. 2d at 682, 691. Justices Lyons and Murdock neither joined the lead opinion nor wrote their own; they simply concurred in the result. <u>Id.</u> at 691. Justice See wrote a dissenting opinion, which was joined by Justices Stuart, Smith, and Bolin. <u>See id.</u> That dissenting opinion takes issue with an aspect of the plurality opinion that is not relevant here, namely, its holding that the executor did not bind himself to the arbitration agreement by alleging a breach of contract claim in his amended complaint. <u>Compare id.</u> at 690 ("[The executor] cannot be said to have 'manifested assent' to specific provisions of the agreement simply by averring a breach of that agreement. Consequently, [he] is not bound by the agreement or by the arbitration clause therein."), <u>with id.</u> at 694–96 (See, J., dissenting) (reasoning that, "by affirmatively alleging the existence of the contract [the executor] ratified the contract" and "cannot now deny being bound by it").

22

opinion "does not constitute binding precedent"); see also Ex parte Disc. Foods, Inc., 789 So. 2d 842, 845 (Ala. 2001) (per curiam) ("The precedential value of the reasoning in a plurality opinion is questionable at best."); Ex parte Achenbach, 783 So. 2d 4, 7 (Ala. 2000) ("[T]he precedential value of the reasoning in a plurality opinion is questionable."); D.C.S. v. L.B., 84 So. 3d 954, 956 (Ala. Civ. App. 2011).

To treat as authoritative a category of state supreme court opinions that the court itself has said are not authoritative would flout its role as the final arbiter of state law.  A court's right to pronounce the law includes the right to decide which pronouncements of its judges are law.  We have held that we are not bound by plurality opinions of the United States Supreme Court.  See, e.g., Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1189 n.3 (11th Cir. 2004) ("United States Supreme Court plurality opinions are not binding on us.").  By the same token, we will not consider ourselves bound by pronouncements in plurality opinions of a state supreme court, especially when that state supreme court has warned against it.

Not only that, but a later decision of the Alabama Supreme Court vitiated whatever persuasive value the second premise of the Noland plurality opinion might otherwise have had.  The case is Tennessee Health Management, Inc. v.

23

Johnson, 49 So. 3d 175 (Ala. 2010).  A daughter, acting as her mother's personal and legal representative, signed all nursing home admissions forms on her mother's behalf.  Id. at 176.  The daughter later sued the nursing home on her mother's behalf alleging that her mother suffered various injuries during her stay at the nursing home.  Id. at 177.  The mother died while that lawsuit was pending, and a different daughter became the executor of the mother's estate.  Compare id. at 176 (identifying "Barbara Rousseau" as the pre-mortem personal representative who signed the arbitration agreement), with id. at 178 (identifying "Carol J. Rousseau Johnson" as the executor of the estate).  As executor, that different daughter filed an amended complaint against the nursing home, adding a wrongful death claim alleging that the various injuries "resulted in [the resident's] death."[8]  Id. at 178.  When the nursing home moved to compel arbitration, the executor objected on the ground that the decedent was "not bound by the

---

[8] The Johnson opinion itself never explicitly states that the executor's amended complaint in that case contained a wrongful death claim, but the amendment did in fact add such a claim. The amended complaint begins with the allegation:  "This [action] is brought by Carol J. Rousseau Johnson, as the personal representative of The Estate of Dolores J. Rousseau, deceased, pursuant to Code of Alabama 1975 § 6-5-410 et seq. [the Alabama wrongful death statute]."  Pl.'s Am. Compl. at 2, ¶ 1, Johnson ex rel. Rousseau v. Tenn. Health Mgmt., Inc., No. CV08-900469 (Ala. Madison Cnty. Cir. Ct. July 22, 2009).  Alabama law permits bringing both a survival action and a wrongful death claim in the same complaint.  See Johnson, 49 So. 3d at 178 ("The amended complaint adds the allegation that [the resident] was injured so severely during her stay at [the nursing home] that those injuries resulted in her death . . . ."); see also King v. Nat'l Spa & Pool Inst., Inc., 607 So. 2d 1241, 1246 (Ala. 1992) ("The fact that the injury that serves as the basis for the personal injury action later gives rise to a wrongful death claim does not extinguish the original personal injury claim.").

24

[arbitration] agreement" because she had not signed it and "was not present" when her daughter signed it on her behalf, as her personal and legal representative. Id. at 180.

Relying on the Carraway decision, which followed the simple rule from Briarcliff that an arbitration agreement that binds a decedent binds the executor of her estate, the Alabama Supreme Court in Johnson quickly disposed of the executor's argument. See id. at 181. It held that one reason the decedent was bound by the arbitration agreement was that her daughter had signed it on her behalf as her legal representative. Id. The Court distinguished the Noland case "because the nursing-home resident in Noland was mentally incompetent and could not authorize anyone to act on her behalf and because the daughter-in-law did not sign any document in the capacity of her mother-in-law's legal representative." Id. at 180–81. In the case before it, the Johnson Court concluded that the daughter who signed the nursing home admission forms, including the arbitration agreement, "had the apparent authority to bind [her mother]" when she signed those documents because the evidence showed that the mother "passively permitted [her daughter] to act on her behalf." Id. at 181.

Because the signature of the daughter as pre-mortem personal representative

25

of the mother bound the mother to the contract in <u>Johnson</u>, there was "a valid contract calling for arbitration" between the decedent and the nursing home.  <u>Id.</u> And because there was a valid contract between the decedent and the nursing home calling for arbitration, "[t]he trial court erred in denying the motion to compel arbitration" of the wrongful death and other claims brought by the executor (a different daughter, who never signed the agreement in any capacity). Id.

The Alabama Supreme Court's reasoning in <u>Johnson</u> mirrors its reasoning in <u>Briarcliff</u> and <u>Carraway</u>:  the executors in each case had to arbitrate the wrongful death claim because there was a valid arbitration agreement between the decedent and the nursing home.  That reasoning and those holdings are inconsistent with the second premise articulated in the <u>Noland</u> plurality opinion, which is that executors who sign an arbitration agreement on behalf of a resident are bound by the agreement as executors but those who do not sign it on behalf of a resident are not.  In <u>Johnson</u> the executor did not sign the arbitration agreement in any capacity and thus was not a "signatory personal representative," yet the Alabama Supreme Court compelled arbitration of the claims anyway.  And we are compelled to follow its holdings and compel arbitration of the wrongful death claim in this case.

26

The holdings of the Alabama Supreme Court's majority opinions in Briarcliff, Carraway, and Johnson establish the rule that an executor suing a nursing home for wrongful death is bound by an arbitration agreement that binds the decedent. It is undisputed that the decedent in our case, like the decedents in Briarcliff, Carraway, and Johnson, was bound by the arbitration agreement with the nursing home. For that reason, the agreement that Entrekin signed binds the executor of her estate to arbitrate the wrongful death claim, and the district court should have compelled arbitration.

## III.

For the reasons we have discussed, we **REVERSE** the district court's order denying Westside Terrace's motion to compel arbitration and **REMAND WITH INSTRUCTIONS** to compel arbitration.[9]

---

[9] Because we hold that the executor is bound by the arbitration agreement, we do not reach Westside Terrace's argument that the executor in this case is equitably estopped from denying that the Dispute Resolution Agreement applies to him and his wrongful death claim because "his complaint seeks to establish Westside's liability for Mrs. Entrekin's death based upon Westside's alleged breaches of [the agreement]." Appellant Br. 27.